J-A11027-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| TRISHA LEE MENEELY | : | |
| Appellant | : | No. 1527 MDA 2025 |

Appeal from the Judgment of Sentence Entered October 22, 2025
In the Court of Common Pleas of Franklin County Criminal Division at
No(s): CP-28-CR-0000961-2022

BEFORE:  BECK, J., NEUMAN, J., and BENDER, P.J.E.

MEMORANDUM BY NEUMAN, J.:                    **FILED JULY 06, 2026**

Appellant, Trisha Lee Meneely, appeals from the aggregate judgment of sentence of 48 to 108 months' incarceration, imposed after a jury convicted her of aggravated assault, 18 Pa.C.S. § 2702(a)(1), and simple assault, 18 Pa.C.S. § 2701(a)(1).  After careful review, we affirm.

The trial court summarized the facts and procedural history of Appellant's case, as follows:

> On September 9, 2021, Pennsylvania State Police Trooper Connor Graber ("Trooper Graber") responded to a report of a suspicious burn injury on a patient at the Chambersburg Hospital in Franklin County.  Upon arrival, Trooper Graber observed and spoke with Shane Seaman ("[the] Victim"), who possessed chemical burns and was being sprayed in the decontamination room.
>
> Earlier that evening, the Victim [had] woke[n] up with a "red brownish" liquid rolling over his body.  [Appellant] heard the Victim yell and came to the bedroom while on the phone with her

mother.[1, 2]  [The Victim] initially went to the bathroom to shower; however, his medical training caused him to stop because he did not know what the substance was on his body.  He returned to the bedroom, where he witnessed [Appellant] stripping the sheets from the bed and throwing them into a trash bag.  Shortly thereafter[,] she began cleaning up the liquid from the floor with a mop.  [Appellant] transported the Victim from their house … ("the Residence") to the Chambersburg Hospital.  Thereafter, [the Victim] was transferred to the burn unit of Lehigh Valley [H]ospital, where he remained for two days before being discharged.  [The Victim] sustained chemical burns, requiring skin grafts on approximately 15 percent of his body and additional procedures at Lehigh.

Trooper Graber's involvement in the investigation was limited.  In addition to initially speaking with the Victim, he spoke with [Appellant] at the Chambersburg Hospital once she returned from retrieving her cell phone at the Residence, collected various items of clothing belonging to the Victim, and placed them into evidence….

Upon application of Trooper Spencer Taylor of the Pennsylvania State Police [("PSP")], multiple search warrants were issued by Magisterial District Judge David L. Plum in connection [with] this case, including one permitting the search of the Residence where the Victim and [Appellant] lived.  The [t]roopers collected physical evidence containing the chemical from the [R]esidence and turned it over to the criminal lab.  On October 6, 2021, lab report H21-073291 was generated and indicated the chemical was sulfuric acid, which can be commonly found in drain cleaner or battery acid.

On March 18, 2025, at the conclusion of a two-day trial, a jury found [Appellant] guilty of one count each of aggravated assault

---

[1] The Victim testified that in September of 2021 when this incident occurred, he and Appellant had been in a romantic relationship for approximately 2½ years and had been living together "for about the last 8 months…."  N.T. Trial, 3/17/25, at 61.

[2] To clarify, the Victim testified that when he woke up, Appellant "was standing at … the side … of the bed with a cell phone held up to her ear."  N.T. Trial at 66.  He asked her, "What did you do?" and "[s]he said that she was talking to her mother on the phone and she heard me yell[, s]o she came back."  *Id.*

and simple assault. Sentencing was scheduled for May 14, 2025. On May 7, 2025, [Appellant] filed a motion for [a] new trial based on after-discovered evidence. [The court] continued the May 14, 2025 sentencing hearing, ordered the Commonwealth to file an answer to the motion, and scheduled a hearing for June 26, 2025. The Commonwealth timely filed an answer on May 13, 2025. The parties convened for the June 26, 2025 hearing, at which time it became apparent that the … witness [(on whom Appellant's motion for after-discovered evidence was based)] required independent counsel. [The court] continued the hearing until August 21, 2025, and appointed the … witness counsel. An evidentiary hearing was ultimately held on August 21, 2025. At the conclusion, [the court] ordered the parties to submit briefs. The Commonwealth and [Appellant] complied and submitted their respective briefs on September 12, 2025. On October 20, 2025, [the trial court] entered an order denying [Appellant's] motion for [a] new trial based on after-discovered evidence. On October 22, 2025, [Appellant] was sentenced to an aggregate term of 48 … to 108 months of incarceration in a State Correctional Institution. [Appellant] timely filed a notice of appeal on November 4, 2025. In compliance with [an] order of court, [Appellant] filed her [Pa.R.A.P. 1925(b)] concise statement of matters complained of on appeal.

Trial Court Opinion (TCO), 1/6/26, at 1-4 (footnotes, unnecessary capitalization, and citations to the record omitted). The trial court filed its Rule 1925(a) opinion on January 6, 2026.

Herein, Appellant states two issues for our review:

1. Whether the trial court erred in its October 20, 2025 order denying Appellant a new trial based on after[-]discovered evidence?

2. Whether the evidence was sufficient to convict [A]ppellant of aggravated assault when the Commonwealth failed to prove beyond a reasonable doubt that Appellant caused injury to the [V]ictim?

Appellant's Brief at 3 (unnecessary capitalization omitted).

In Appellant's first issue, she challenges the trial court's denial of her request for a new trial based on after-discovered evidence. An appellate court reviews a trial court's determination on a claim of after-discovered evidence for an abuse of discretion. *See Commonwealth v. Lyons*, 79 A.3d 1053, 1068 (Pa. 2013); *Commonwealth v. Trinidad*, 96 A.3d 1031, 1037 (Pa. Super. 2014). To receive a new trial based on after-discovered evidence, a petitioner must satisfy a four-part test requiring him or her

> to demonstrate the [after-discovered] evidence: (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.

*Commonwealth v. Small*, 189 A.3d 961, 972 (Pa. 2018) (citation omitted). "The test is conjunctive[,]" meaning "the [petitioner] must show by a preponderance of the evidence that each of these factors has been met in order for a new trial to be warranted." *Commonwealth v. Padillas*, 997 A.2d 356, 363 (Pa. Super. 2010).

Here, Appellant's after-discovered-evidence motion was based on Facebook messages she had received in April of 2025 from Gregory Gratkowski. *See* Motion, 5/7/25, at unnumbered 4 (copies of Facebook messages dated "APR 9 AT 11:03 PM"); *see also* N.T., 8/21/25, at 9 (the parties agreeing the messages were sent in "the year after trial[,]" which concluded in March of 2025). "In the messages[,] Mr. Gratkowski claim[ed] to have been at the scene on the night of the incident and claim[ed] to have

seen the burned bed." Motion at unnumbered 1 ¶ 4. Appellant also averred Mr. Gratkowski had made "disparaging remarks" about the Victim to Appellant and others. *Id.* at unnumbered 1 ¶¶ 5, 6. Appellant argued Mr. Gratkowski's Facebook messages met each prong of the after-discovered evidence test, as they did not exist prior to trial, they were not cumulative or corroborative of any trial evidence, they would not be used solely to impeach any witness, and they would likely result in a different verdict if admitted at a new trial. *Id.* at unnumbered 2 ¶¶ 9-12. Regarding the last prong, Appellant specifically averred:

> The Commonwealth's entire case was centered on the fact that no one else was present in the home. [Appellant's] defense was centered on the lack of any direct evidence of guilt. Evidence of a local residen[t], [Mr. Gratkowski,] who has an obvious vendetta against the [V]ictim, who claims to have been in the house and to have seen the burned bed[,] would likely result in a different verdict given the circumstances of the case.

*Id.* at unnumbered 2 ¶ 12.

At the August 21, 2025 evidentiary hearing on Appellant's motion, Mr. Gratkowski testified. On direct-examination by Appellant's counsel, Mr. Gratkowski explained he had met Appellant one time "at a comedy events show" approximately five or six years earlier. N.T., 8/21/25, at 13. He testified he also knew the Victim, as they had worked together at a hospital for many years. *Id.*; *see also id.* at 16 (Mr. Gratkowski's claiming he had known the Victim for 35 years). Mr. Gratkowski confirmed he had sent Facebook messages to Appellant, specifically one in which he said, "I was at [the Victim's] house that night[,]" to which Appellant replied, "[Y]ou were[?]"

- 5 -

*Id.* at 16-17. Mr. Gratkowski also confirmed he told Appellant in a message that he "saw the burn hole in the bed[.]" *Id.* at 17.

On cross-examination, the Commonwealth elicited the following testimony from Mr. Gratkowski:

[The Commonwealth:] When you made the statement to her, ["]I was at his house that night,[" you were] referring to the night [the Victim] was burned presumably, correct, in the messages?

[Mr. Gratkowski:] Yes.

[The Commonwealth:] … [Appellant's] response was, ["Y]ou were[?"] … correct?

[Mr. Gratkowski:] Yes.

[The Commonwealth:] And we know [Appellant] was there, correct?

[Mr. Gratkowski:] Yes.

[The Commonwealth:] So her response to you, questioning your veracity about your being there that night, did that not shock you about how she would not have known that since she was, in fact, there?

[Mr. Gratkowski:] It did.  It did.

[The Commonwealth:] Then you respond, ["]I saw the burn hole in the bed["] --

[Mr. Gratkowski:] Correct.

***

[The Commonwealth:] You did not say, I burned him, correct?

[Mr. Gratkowski:] Right.

[The Commonwealth:] You did not say, I know who burned him, correct?

[Mr. Gratkowski:] Right.

[The Commonwealth:] You did not say, he told me somebody besides you burned him, correct?

[Mr. Gratkowski:] Correct.

[The Commonwealth:] … Mr. Gratkowski, your explanation, I believe, if I understand correctly, is either this was a typo or you were simply confused about the timeline of when things --

[Mr. Gratkowski:] Yes.

[The Commonwealth:] -- transpired.

[Mr. Gratkowski:] Yes. I had forgot [*sic*] he had gone to the burn center for two days. Of course, I didn't drive him there. I know, you know that didn't even occur to me at the time because it was so far back.

[The Commonwealth:] … So the bottom line, Mr. Gratkowski, is were you present when [the Victim] was injured?

[Mr. Gratkowski:] I was not, no.

[The Commonwealth:] Did you have keys to [the Victim's] house --

[Mr. Gratkowski:] No.

[The Commonwealth:] -- at any point?

[Mr. Gratkowski:] No.

[The Commonwealth:] Ever in your life?

[Mr. Gratkowski:] Never.

[The Commonwealth:] Did you ever have a pass code to the garage door opener or a garage door opener itself to [the Victim's] house?

[Mr. Gratkowski:] No.

***

[The Commonwealth:] And your testimony is that in the time he lived in the … house [with Appellant], you had only been over to that property approximately six times or half a dozen times, I think you said, correct?

[Mr. Gratkowski:] Yes.

- 7 -

[The Commonwealth:] And you had never been there when [Appellant] was present[?]

[Mr. Gratkowski:] Never.

[The Commonwealth:] I don't mean to harp on this[,] but it is very important, okay? So[,] I want to make sure I understand.

\*\*\*

You did not know about [the Victim's] burns until they had occurred, correct?

[Mr. Gratkowski:] Correct.

[The Commonwealth:] And at that point it was not instantaneous knowledge of his injuries, correct?

[Mr. Gratkowski:] Right.

[The Commonwealth:] In other words, he never -- he did not call you to say, ["]Oh, God. I'm on the way to the hospital. I was just burned by some substance,["] correct?

[Mr. Gratkowski:] He -- correct.

[The Commonwealth:] And, in fact, how did you find out about the actual injuries?

[Mr. Gratkowski:] I think it was my daughter. I was at home and she had seen something, maybe, in the local police Facebook[,] and [she] had called me and said she had recognized [the Victim's] name, you know, because he knows my kids. And so[,] it would have been that afternoon after it happened.

[The Commonwealth:] Okay. And then after you learned about that, your wife and you reached out and made arrangements to take food to him.

[Mr. Gratkowski:] Correct.

[The Commonwealth:] And 5 years later, you don't even remember what the food was. You just remember taking food over; is that fair?

[Mr. Gratkowski:] … You're right, yes.

[The Commonwealth:] Was [Appellant] present when you took the food over?

[Mr. Gratkowski:] She was not.

[The Commonwealth:] Are you aware that she was already moved out of the house when you took the food over?

[Mr. Gratkowski:] I was. [The Victim] told me. He showed me the burn mark on the bed.

[The Commonwealth:] Okay, [the Victim] showed you the burn mark on the bed and he informed you that [Appellant] had moved out?

[Mr. Gratkowski:] Correct.

[The Commonwealth:] And that's [the] first time you saw [the Victim] or interacted with [the Victim] since the infliction of these injuries to him?

[Mr. Gratkowski:] Yes. Yes.

[The Commonwealth:] And, again, … you have no independent knowledge of how these injuries were inflicted, correct?

[Mr. Gratkowski:] No, … I don't.

[The Commonwealth:] You were not there --

[Mr. Gratkowski:] No.

[The Commonwealth:] -- when they were inflicted, correct?

[Mr. Gratkowski:] Right. Yes.

*Id.* at 33-38.

Based on this testimony, the trial court concluded Appellant had "fail[ed] to satisfy the fourth prong of the [after-discovered-evidence] test…." TCO at 5. The court noted that,

> [i]n determining whether the alleged after-discovered evidence is of such nature and character that it would likely compel a different verdict if a new trial is granted, the court must consider "the integrity of the alleged after-discovered evidence, the motive of those offering the evidence, and the overall strength of the evidence supporting the conviction."

*Id.* at 5-6 (quoting ***Padillas***, 997 A.2d at 365). The court then concluded the above-quoted testimony by Mr. Gratkowski during the Commonwealth's cross-examination demonstrated the verdict would not likely be different at a new trial, explaining:

> [T]he witness's cumulative testimony was that he had been confused about the timeline when he sent the messages [to Appellant,] and that the years that had passed had caused him to misremember the timeline of events. We find this explanation to be overwhelmingly convincing; not because of credibility of the witness; rather, because it is the only explanation that squares with the testimony as a whole at trial.
>
> In ***Commonwealth v. Murchison***, [328 A.3d 5 (Pa. 2024)], the Pennsylvania Supreme Court held that the only way to assess the likelihood that after-discovered evidence will produce a different result is to review the totality of all the trial, including, but not limited to, evidence and the parties' closing arguments. [***Id.*** at 17].
>
> Here, when the "new" evidence is viewed in the context of the totality of the trial record, it becomes clear that it does not meaningfully weaken the Commonwealth's case, nor does it create any reasonable probability of a different verdict. After-acquired evidence of messages suggesting that [Mr. Gratkowski] was present at the residence of [Appellant] and [the] Victim on the night of the incident cannot be reconciled with the other evidence at trial. With no independent means of entering the home, either [Appellant] or [the] Victim would have been aware of [Mr. Gratkowski's] presence during the time of the incident; specifically, as [Appellant] was the party awake just prior to the incident, she would have had knowledge of this presence if he had caused the harm. Further, [Appellant's] … response showing surprise at [Mr. Gratkowski's] statement he was present that evening further confirms that [Appellant] did not see him at the residence because he was not there.
>
> [Mr. Gratkowski's] testimony that he learned of the incident through his daughter, visited the Victim two days later … following his discharge from the burn unit, and first saw the burned bed at this visit, can be reconciled with the trial testimony. [Mr.

- 10 -

Gratkowski's] testimony that while he was a friend of the Victim's, he had no key or independent access to the house can be reconciled with the trial testimony. The after-discovered evidence on which [Appellant] relies does not undermine or contradict any aspect of the Commonwealth's theory at trial. The Victim testified that the residence had been locked and secured for the night, and that he and [Appellant] were the only two individuals present when he awoke covered in a burning chemical. Trooper Spencer Taylor also testified at the trial that there was no sign of forced entry nor any signs of struggle outside the residence.

Nothing in the Facebook messages nor [Mr. Gratkowski's] testimony places a third party inside the home or otherwise calls the Victim's testimony into question.

For these reasons, we find [Appellant's] motion for new trial is without merit. The Facebook messages do not qualify as [after-]discovered evidence warranting a new trial.

TCO at 11-13 (unnecessary capitalization omitted).

We discern no abuse of discretion in the trial court's decision. The court found Mr. Gratkowski's testimony that he visited the Victim and saw the burned bed days *after* the attack aligned with the totality of the evidence presented at trial. The court concluded that, in contrast, interpreting his messages as meaning he was present in the Victim's home *at the time* he was attacked did *not* align with any of the evidence at trial and, thus, was not believable. In challenging the court's decision to believe Mr. Gratkowski was in the Victim's home days *after* the attack, Appellant stresses the Commonwealth

did not speak with Mr. Gratkowski's wife, … [or] the [V]ictim to verify Mr. Gratkowski's visitation following the incident, they did not perform data location analysis of his cell phone, they did not search his phone for evidence that he conducted internet searches [for,] or [made] purchases of[,] a caustic substance[,] or [do] any other type of investigation.

- 11 -

Appellant's Brief at 9-10.[3] Ultimately, Appellant concludes that, although Mr. Gratkowski "recanted his statement" he was in the house on the night of the attack, he also clearly said he was in the home, saw the burned bed, and disliked the Victim, which she insists would be sufficient to result in a different verdict if admitted at a new trial. *Id.*

We disagree. Essentially, Appellant is asking us to re-evaluate Mr. Gratkowski's credibility and reach a different conclusion than the trial court. However, the trial court's credibility determinations are an integral part of determining if a new trial is warranted based on after-discovered evidence. *See Commonwealth v. Morgan*, No. 1225 MDA 2021, unpublished memorandum at 5 (Pa. Super. filed May 5, 2022) (noting that "credibility determinations are an integral part of determining whether a [Post Conviction

---

[3] Appellant also argues Mr. Gratkowski's testimony that he was not in the Victim's home on the night of the incident should not be believed, where Mr. Gratkowski "was interviewed [by the PSP, and] was clearly caught lying to investigators…." Appellant's Brief at 10. More specifically, Appellant asserts Mr. Gratkowski was interviewed by the PSP and "den[ied] sending certain messages, den[ied] text conversations [with Appellant,] and caus[ed] one of the [t]roopers to become so upset, he had to leave the interview room." *Id.* at 6. However, Appellant does not cite to any evidence or testimony to support these claims. "We shall not develop an argument for an appellant, nor shall we scour the record to find evidence to support an argument; instead, we will deem [the] issue to be waived." *Milby v. Pote*, 189 A.3d 1065, 1079 (Pa. Super. 2018) (citing *Commonwealth v. Beshore*, 916 A.2d 1128, 1140 (Pa. Super. 2007)). We also note Appellant did not make any mention of Mr. Gratkowski's interview with the PSP, or raise any claim based thereon, in her motion for a new trial. Accordingly, her attempt to assert this argument now is waived. *See id.*; *see also* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546,] petitioner has presented after-discovered evidence that would entitle him to a new trial") (citing **Small**, 189 A.3d at 978-79 (remanding for the PCRA court to make relevant credibility determinations)).[4] As our review of the record supports the court's credibility determinations regarding Mr. Gratkowski, we decline to usurp the court's decision or reweigh the evidence. We also discern no abuse of discretion in the court's conclusion that Mr. Gratkowski's testimony he was in the home days **after** the attack would not result in a different verdict at a new trial. Accordingly, no relief is due on Appellant's first issue.

In Appellant's second issue, she argues the evidence was insufficient to support her conviction of aggravated assault because "[t]he Commonwealth failed to prove beyond a reasonable doubt that Appellant caused the injuries to [the Victim]." Appellant's Brief at 12. She notes the Victim "did not see a container" in Appellant's hands when he awoke to find her standing by the bed, "and no container was found by law enforcement during their investigation." **Id.** Appellant also stresses "[t]he Commonwealth offered no motive for this … act[,]" **id.**, and "did not investigate Appellant's cell phone location, her route between the shared home and the hospital, [or] her credit card or banking history" to see if she had purchased the liquid used to burn the Victim, **id.** at 13. Indeed, the Commonwealth "was unable to determine the source of the substance" at all. **Id.** Appellant maintains "[t]he entire

---

[4] Pursuant to Pa.R.A.P. 126(b), non-precedential decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value.

premise of the case relied on Appellant['s] being the only other person present[,]" however, "[m]ere presence at the scene of a crime is insufficient to establish guilt." *Id.* (citing *Commonwealth v. Garrett*, 222 A.2d 902, 905 (Pa. 1966)).

Again, no relief is due. Initially, we observe that,

[w]hether the evidence was sufficient to sustain the charge presents a question of law. Our standard of review is *de novo*, and our scope of review is plenary. In conducting our inquiry, we examine[,]

whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict-winner, [is] sufficient to establish all elements of the offense beyond a reasonable doubt. We may not weigh the evidence or substitute our judgment for that of the fact-finder. Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. When evaluating the credibility and weight of the evidence, the fact-finder is free to believe all, part or none of the evidence. For purposes of our review under these principles, we must review the entire record and consider all of the evidence introduced.

*Commonwealth v. Rojas-Rolon*, 256 A.3d 432, 436 (Pa. Super. 2021) (cleaned up).

Moreover,

in addition to proving the statutory elements of the crimes charged beyond a reasonable doubt, the Commonwealth must also establish the identity of the defendant as the perpetrator of the crimes. It is well-settled that evidence of identity need not be positive and certain to sustain a conviction.

Even if the Commonwealth presented only circumstantial evidence and offered no positive identification of the perpetrator, we may not weigh the evidence and substitute our judgment for the fact-finder as long as the evidence was sufficient to prove the accused's guilt.

*Commonwealth v. Torsunov*, 345 A.3d 339, 347–48 (Pa. Super. 2025) (cleaned up).

Here, Appellant is correct that her mere presence at the scene *alone* would be insufficient to sustain her conviction. *See Garrett*, *supra*; *see also Commonwealth v. La*, 640 A.2d 1336, 1344 (Pa. Super. 1994) ("The law is clear that a defendant cannot be convicted of a crime where the only evidence to connect him with the crime is 'mere presence' at or near the scene."). However, the Commonwealth presented more proof of Appellant's guilt in this case than just her presence at the scene. Namely, the Commonwealth explains:

> The trial testimony of the [V]ictim reflected that he and Appellant were the only two individuals in the residence at the time the [V]ictim was burned. The [V]ictim further testified that he locked and secured the residence for the evening. Finally, the jury heard testimony from Trooper Taylor that there was no evidence of forced entry into the residence.
>
> The jury further heard testimony from the [V]ictim about how he woke up "in a lot of pain" and noticed a liquid-like substance rolling all over his body. When the [V]ictim woke up, Appellant was standing at the side of the bed with a cell phone held up to her ear, and she was talking to her mother. Shortly after the [V]ictim exited the bed, Appellant was stripping the sheets off the bed and putting them into a trash bag. Appellant then proceeded to clean up whatever liquid was on the floor with a mop and bucket.
>
> Accordingly, the Commonwealth did not solely rely on Appellant's mere presence at the scene of the crime[,] absent further evidence. *See La*, 640 A.2d at 1344. The Commonwealth, therefore, albeit through circumstantial evidence, proved

- 15 -

Appellant's identity beyond a reasonable doubt.  ***See Torsunov***, 345 A.3d at 347-48.  Appellant is, accordingly, not entitled to relief.

Commonwealth's Brief at 14-15 (citations to the record omitted).

We agree with the Commonwealth.  The house was locked for the night at the time of the attack; Appellant was the only person in the home with the Victim; she was standing over the bed when he awoke with the liquid burning his skin; and Appellant quickly tried to clean up the liquid and discard the bedsheets after the incident.  This evidence, albeit circumstantial, proved more than Appellant's mere presence at the scene, and was sufficient to sustain her conviction for aggravated assault.

Judgment of sentence affirmed.

Judgment Entered.

_____

Benjamin D. Kohler, Esq.
Prothonotary

Date: 07/06/2026

- 16 -